**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BRIANNA HULL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CSL PLASMA, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

## CLASS ACTION COMPLAINT

Plaintiff Brianna Hull ("Plaintiff"), by her undersigned attorneys, on her own behalf and on behalf of all others similarly situated, upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, brings this Class Action Complaint against CSL Plasma, Inc. ("Defendant" or "CSL Plasma") for its violations of Plaintiff's privacy rights guaranteed under the Illinois Genetic Information Privacy Act, 410 ILCS 513/1 *et seq.* ("GIPA"), and alleges as follows:

## NATURE OF THE ACTION

1. Unlocking the human genetic code created the potential for hitherto unfathomable medical development. It permitted individuals to learn in detail the possibilities that were hidden within their genome. For example, women can now learn whether they are predisposed to get breast cancer; families can trace their genetic lineage back thousands of years, and law enforcement can use DNA samples to identify criminals.

2. This information can only be obtained, however, if people are willing to share genetic information, and that is only possible if people know that their genetic information will not be used against them in future employment, insurance or other situations. For example, few

women would want to learn about a predisposition to breast cancer if that meant that they could be barred from certain jobs or prevented from obtaining life insurance.

3. The Illinois Legislature enacted GIPA in 1998 with the goal of protecting Illinois residents from having their genetic information used against them in employment settings.

4. Consistent with this goal, GIPA provides strong legal protections to ensure that Illinois residents can take advantage of the knowledge that can be gained from obtaining personal genetic information, without fear that this information could be used against them by potential, current or future employers.

5. Among its other valuable protections, GIPA prohibits employers from learning or using genetic information in making employment decisions. GIPA bars employers from asking about employees or potential employees' genetic information, prevents employers from obtaining this information from third parties, and forbids employers from using such information to affect the terms and conditions of employment.

6. To accomplish this goal, GIPA employs a comprehensive definition of "genetic information" that includes information regarding an individual's family medical history.

7. Despite GIPA's long-standing prohibitions, some companies in Illinois still require their employees or applicants to provide protected family medical history when making hiring determinations and job assignments, in blatant violation of the law.

8. Defendant chose to disregard Illinois' genetic privacy laws by repeatedly asking job applicants and/or employees to provide genetic information, in the form of family medical history.

9. Accordingly, Plaintiff seeks on behalf of herself, and all other similarly-situated persons, an order awarding statutory damages and injunctive relief to Plaintiff and the members of the proposed Class.

## PARTIES

10. Plaintiff Brianna Hull is and was, at all relevant times, a resident of the State of Illinois. Ms. Hull currently resides in Belleville, Illinois. From approximately July 2021 to the summer of 2022, Ms. Hull worked for CSL Plasma as a phlebotomist.

11. Defendant CSL Plasma operates one of the world's largest plasma collection networks, with nearly 350 plasma donation centers globally and over 17,000 employees.[1] CSL Plasma operates several facilities in Illinois, including a facility located at 2025 W Highway 50, O'Fallon, IL 62269 ("O'Fallon Facility"). CSL Plasma's headquarters is located at 900 Broken Sound Pkwy NW FL 4 Boca Raton, FL, 33487.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the class contains hundreds of members, many of whom currently have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

13. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

---

[11] *See* https://www.cslplasma.com/about-us.

14. This Court has jurisdiction over the Defendants because they conduct business in this District, and a substantial part of the unlawful events and practices which give rise to this action occurred in this District.

15. This Court may exercise jurisdiction over the Defendants because they have sufficient minimum contacts in Illinois and purposefully avail themselves of the markets within Illinois through the offering of their services and hiring of employees, thus rendering jurisdiction by this Court proper and necessary.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this judicial district and because Defendants have conducted the unlawful practices at issue in this action within this judicial district and have done business within this judicial district. Venue is also proper in this court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the Court's personal jurisdiction with respect to this action.

**ILLINOIS GENETIC INFORMATION PRIVACY ACT ("GIPA")**

17. During the 1990s, the U.S. government poured billions of dollars into the Human Genome Project in an attempt to map the entire human genetic code. When President Clinton announced the first successful "rough draft" of the Project in 2000, he hailed it as one of the great achievements of human history, and said: "Today we are learning the language with which God created life[.]"[2]

18. As with previous leaps in scientific knowledge, however, cracking the human genetic code brought with it many concerns. In 1997, a popular film called *Gattaca* captured the

[2] *Scientists Complete Rough Draft of Human Genome* (N.Y. Times June 26, 2000) *available at* https://archive.nytimes.com/www.nytimes.com/library/national/science/062600sci-human-genome.html?amp;sq=francis%252520collins&st=cse&scp=23.

zeitgeist of the time by portraying a futuristic world in which personal genetic information was used to systematically segregate people based upon their respective genetics. Persons with genetically-engineered profiles were considered superior to, and received better jobs than, persons who were conceived "naturally," without any genetic tinkering. Widely considered to be a warning against the unregulated collection and use of genetic information, the film remains popular today, and is still used regularly in schools to teach students about the possible consequences of the misuse of genetic information.[3]

19. In 1998, in response to calls from its citizens for statutory protection, Illinois enacted GIPA, a historic, ground-breaking law intended to protect persons from having their genetic information (such as family medical history) used against them in a discriminatory manner. Restricting use or requests for protected genetic information is a key component of health information privacy. 410 ILCS 513/5(1)-(5).

20. A key component of the statute is a limitation on requests for protected genetic information to only those circumstances in which such information is absolutely necessary. 410 ILCS 513/5(1)-(5).

21. The Illinois Legislature amended GIPA in 2008 to increase its protections by harmonizing it with the then-recently passed Federal Genetic Information Nondiscrimination Act of 2008 ("GINA"), 110 P.L. 233; Illinois House Transcript, 2008 Reg. Sess. No. 276, p. 33; *see also* 42 U.S.C. § 2000ff. The 2008 amendments were also intended to expand GIPA's protections beyond those offered under federal law. For example, as Member Ryg acknowledged:

> Now, that the Federal Law has strengthened their provisions with the newly enacted legislation, this Illinois law picks up where they leave off and it

[3] *What Do People Who Work in Genetics Think About Gattaca 25 Years After Its Release* (Slate Aug. 15, 2022) *available at* https://slate.com/technology/2022/08/gattaca-25th-anniversary-genetics-crispr.html.

> further defines which employers are covered. It's typical for Federal Law to limit employers of fifteen (15) or more. We picked that up and defined even more… more employees are protected under this Act.

Illinois House Transcript, 2008 Reg. Sess. No. 276, p. 33 (H.R. Ryg). The 2008 amendments also imposed statutory damages for the unauthorized collection of genetic information and generally sought to make claims brought under GIPA "even stronger than" claims brought under GINA. See 2008 Reg. Sess. No. 276, p. 32 (H.R. Ryg).

22. During discussion of the 2008 GIPA amendments, members of the Illinois Legislature acknowledged the importance of safeguarding the ability of persons to learn about their own genetics without fear of discovery by employers. As one member remarked:

> I hope the [legislature] understands the importance of [family medical history]; it's becoming more and more important. Back in '96 or '97, I had a third generation ovarian cancer survivor that came to me with this issue. … If a woman has … the gene that causes breast cancer, she can have up to an 84 percent probability that she will develop breast cancer sometime in her life … it's important that we help people be able to know that information and know they won't be discriminated against in their employment …. Quite honestly, with genetic information we have today, we could identify a pool of people that … no one would want to employ. [GIPA] helps guarantee that we don't have that kind of discrimination occur.

Illinois House Transcript, 2008 Reg. Sess. No. 276, pp. 33-34 (H.R. Moffitt).

23. In harmonizing GIPA with federal law, the Illinois Legislature adopted Congress' broad definition of "genetic information" that includes not just the narrow results of an individual's genetic tests, but also information regarding "[t]he manifestation of a disease or disorder in family members of such individual[.]" 410 ILCS 513/10; *see* 45 C.F.R. § 160.103. In other words, GINA, and therefore GIPA, both protect an employee's family health history from disclosure.

24. GIPA prohibits employers from directly or indirectly requesting or using genetic information in hiring, firing, demoting, or in determining work assignment or classifications of

applicants or employees. Specifically, GIPA states: "An employer … shall not directly or indirectly do any of the following:

> (1) solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, … as a condition of employment, preemployment application…;
>
> (2) affect the terms, conditions, or privileges of employment, preemployment application, … or terminate the employment, … of any person because of genetic testing or genetic information with respect to the employee or family member…;
>
> (3) limit, segregate, or classify employees in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee because of genetic testing or genetic information with respect to the employee or a family member, …; and
>
> (4) retaliate through discharge or in any other manner against any person alleging a violation of this Act or participating in any manner in a proceeding under this Act.

410 Ill. Comp. Stat. 513/25(c). Nor may an employer or prospective employer enter into an agreement with a person to take a genetic test. 410 ILCS 513/25(d).

25. Even if an employer otherwise obtains genetic information lawfully, it may not use or disclose that genetic information in violation of GIPA. 410 ILCS 513/25(j).

26. To enforce these and other requirements, GIPA provides employees with a broad private right of action, stating: "Any person aggrieved by a violation of this Act shall have a right of action … against an offending party." 410 ILCS 513/40(a). Under this right of action, a person whose family health history was requested by their employer may recover, for each such violation: (a) the greater of (i) their actual damages, or (ii) statutory damages ranging from $2,500 (for negligent violations) up to $15,000 (for willful violations), (b) a reasonable fee for the attorney(s)

who participated in the recovery; and (c) "[s]uch other relief, including an injunction, as the … court may deem appropriate." *Id.*

27. To state a claim under GIPA, a plaintiff is not required to prove, or even allege, actual injury from the improper practice. The Illinois Supreme Court's interpretation of the term "aggrieved person" under the Illinois Biometric Privacy Act ("BIPA") -- that the mere violation of the plaintiff's statutory rights inflicts sufficient injury to assert a claim – also applies to the term as it is used in GIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, at ¶ 40, 432 Ill. Dec. 654, 129 N.E.3d 1197 (holding by the Illinois Supreme Court that "an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under [the Illinois Biometric Privacy Act ("**BIPA**")] in order to qualify as an 'aggrieved person' under BIPA); *see Bridges v. Blackstone Grp., Inc.*, 2022 U.S. Dist. LEXIS 121205, at *8 (S. D. Ill. July 8, 2022) (holding that it is appropriate to apply BIPA's definition of "aggrieved person" used by the *Rosenbach* court to alleged violations of GIPA). Thus, under GIPA, a person may recover statutory damages from their employer merely for requesting the person's genetic information, regardless of whether the information was misused or even received by the employer. 410 ILC 513/25(c).

28. Thus, GIPA provides valuable privacy rights, protections, and benefits to the citizens of Illinois and provides those citizens with the means to aggressively enforce those rights.

## PLAINTIFF-SPECIFIC ALLEGATIONS

29. In or around July 2021 Ms. Hull applied for a job with CSL Plasma.

30. During the pre-employment process, Defendant directly or indirectly solicited, requested, or required Ms. Hull to disclose her genetic information in the form of diseases and conditions that had manifested in her family members as a condition of employment and/or pre-employment application.

31. Specifically, Defendant instructed Ms. Hull to take a pre-employment physical examination which was administered by a CSL Plasma doctor at the O'Fallon Facility.

32. Ms. Hull attended the pre-employment physical examination as instructed by Defendant. During this pre-employment physical examination, Ms. Hull was required to complete a medical questionnaire which requested information about her family medical history.

33. Ms. Hull had a reasonable belief that Defendant required the genetic information requested as part of this employer-mandated physical examination as a condition of Ms. Hull's employment.

34. Believing that she would not be hired unless she completed all the paperwork, including the family medical history information, Ms. Hull disclosed genetic information about her family members' medical histories. Ms. Hull would not have provided the genetic information if Defendant had not instructed her to do so.

35. Defendant required Ms. Hull's family medical history as a condition of employment and/or pre-employment application because Defendant would not allow Ms. Hull to start her position until she completed the pre-employment physical.

36. Ms. Hull worked for Defendant as a phlebotomist at their O'Fallon Facility for approximately one year, until the summer of 2022 when she departed her position for another job.

37. Ms. Hull's hiring was conditioned upon successful completion of the onboarding process, which included providing her genetic information to Defendant.

38. During her pre-employment physical, Ms. Hull was not directed by Defendant, either verbally or in writing, not to disclose the solicited genetic information. Nor did Ms. Hull provide prior, knowing, voluntary, and written authorization to Defendant for the use of her genetic information in furtherance of a GIPA-compliant workplace wellness program.

## DEFENDANT VIOLATES GIPA AS A MATTER OF COURSE

39. Upon information and belief, Defendant engages in a pattern or practice of asking employees and/or prospective employees to provide their family medical histories as a condition of employment, as part of Defendant's onboarding process.

40. Plaintiff understands, upon information and belief, that Defendant requests this family medical history information for the purpose of evaluating the risk that the individual may have inherited genetic conditions from family members, and then improperly uses that information when making its hiring decisions, staffing assignments, and determinations regarding workers' compensation claims and medical leave.

41. Upon information and belief, Defendant requests this family medical history information as part of an effort to avoid risk and/or liability for workplace injuries and/or deaths caused by genetic conditions, including but not limited to hypertension, cancer, heart conditions, diabetes, and stroke, which Defendant believes could be inherited and that could be exacerbated by workplace conditions, especially if these conditions are high-stress and/or physically demanding.

42. Upon information and belief, Defendant knew or should have known that its hiring and training managers required new employees to provide genetic information during the onboarding process.

43. Defendant was or should have been aware of its obligations under GIPA. Nevertheless, Defendant intentionally and/or recklessly captured, collected, and/or retained Plaintiff's genetic information in the form of her family medical history in violation of Illinois law.

44. As a result, Defendant's violations were willful because it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of GIPA.

## CLASS ACTION ALLEGATIONS

45. **Proposed Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. Rule 23, subparts (a) and (b)(3), on behalf of herself and the following class (the "Class") of similarly situated individuals, defined as follows:

46. The Class brought by Plaintiff consists of:

> All persons who within the five years prior to the filing of this action (1) applied for employment with CSL Plasma, Inc. ("CSL Plasma") or were hired by CSL Plasma, and (2) were requested by CSL Plasma, or an agent acting on behalf of CSL Plasma, to provide genetic information, including but not limited to health history information about the person's family, in connection with the person's employment and/or application for employment with CSL Plasma.

Excluded from the Class are Defendant's officers and directors, Plaintiff's counsel, and any member of the judiciary presiding over this action.

47. Plaintiff reserves the right to modify this class definition as employment records and other documents are obtained through discovery.

48. **Numerosity:** The exact number of class members is unknown and is not available to Plaintiff at this time, but on information and belief, during the five-year class period, hundreds of people throughout Illinois applied for employment with CSL Plasma during the relevant time period. Undoubtedly, some of those people reside in States outside of Illinois, either because they always lived there or they moved there in the time since Defendant requested their family health history. Therefore, although these and other proposed class members can be identified and located through Defendant's employment and payroll tax records, joinder of all of their claims into one action is impracticable.

49. **Common Questions:** There are several questions of law and fact common to the claims of Plaintiff and the proposed Class members, and those questions predominate over any questions that may affect individual proposed Class members. Common questions include, but are not limited to, the following:

a. whether Defendant, or an agent acting on behalf of Defendant, solicited, requested, captured or collected family medical history of prospective employees;

b. whether the family medical history qualifies as "genetic information" under GIPA;

c. whether Defendant's solicitation, request, collection, or use of said family medical history constituted a violation of GIPA;

d. whether Defendant is responsible for the acts of third parties who helped effectuate the solicitation, request, collection, or use of said family medical history; and

e. whether Defendant's practice of solicitating, requesting, collecting, or using said information was intentional and/or in reckless disregard of Plaintiff's statutory rights.

50. **Typicality**: Plaintiff's claims are typical of the claims of the proposed Class members. Plaintiff alleges the same essential facts and relies upon the same law as all of the other members of the proposed Class. Conversely, Plaintiff is aware of no unique facts or laws that would render Plaintiff's claims atypical of other class members. Significantly, Plaintiff seeks statutory damages, which means damages are to be based solely upon whether Defendant intended to collect the genetic information at issue. Upon information and belief, given that Defendant made a business practice of collecting genetic information from employees, its actions were both consistent and intentional. If required to sue individually, each employee would rely upon the same evidence to prove that Defendant systematically required every new employee to provide the information as part of their onboarding. This evidence would not vary from employee to

employee, because Defendant required the genetic information from every employee. Moreover, because Plaintiff alleges that Defendant fully intended to solicit the information each and every time it did so, the amount of statutory damages claimed for each such incident shall be the same for each and every class member.

51. **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff and her counsel are aware of no conflicts with class members that would prevent them from pursuing the claims of all class members zealously. Plaintiff has no legal interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

52. **Predominance of Common Issues:** the issues identified in Paragraph 47, supra, predominate over any issues affecting individual class members. Plaintiff alleges a single claim: that Defendant engaged in a pattern or practice of violating GIPA, which prohibits employers from soliciting genetic information from their employees. Plaintiff's claim raises the following issues common to the class that predominate over any other issues: : (1) did Plaintiff apply for employment with Defendant; (2) if so, did Defendant's pre-employment process solicit information from the Plaintiff about her family medical history; (3) if so, was the information "genetic information" as defined by GIPA; and (4) if so, did Defendant intend to solicit the information? Not only does every other class member's claim consist of those same four questions and not only would every class member's answers to the questions be the same, but every class member would rely upon much of the same evidence in answering the questions. And, as alleged above, each class member's damages would be calculated in the same way, and would be in the same amount, for every instance in which their family medical history was improperly solicited.

Any issue affecting an individual class member is insignificant compared to the common issues affecting the claims of Plaintiff and the rest of the class.

53. **Superiority to Other Available Methods:** Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Individual lawsuits are not feasible because the litigation costs and attorney fees would far outweigh the relatively small recovery that might be obtained. Individual employees would have no interest in pursuing such cases; nor would they be likely to find counsel willing to litigate an individual claim in exchange for a percentage share of the recovery. Moreover, even if employees were able and willing to pursue individual litigation, with experienced lawyers willing to represent them individually on a contingent basis, a class action would still be preferable. Without it, a multiplicity of individual actions proceeding simultaneously in different courts would likely lead to repetitious discovery, duplicative motions, inconsistent rulings, and other ills. The resultant chaos would increase the expense and attorney time needed to resolve these matters, and it would be a waste of judicial resources to manage each employee's claim individually. A risk of inconsistent rulings would exist as well given the paucity of caselaw interpreting GIPA. In contrast, a single adjudication to resolve the claims of hundreds of employees would avoid conflicting decisions and duplicative proceedings. The economies of scale to be gained by comprehensive supervision before a single court would result in reduced time, effort and expense for all concerned, and would best serve the interests of justice. Finally, there are not likely to be any unusual difficulties in managing this case as a class action, as Plaintiff alleges, Defendant routinely required all new employees to provide genetic information during their onboarding, in violation of GIPA. In sum, given the simplicity of issues and sameness of claims, Plaintiff foresees no class management problems.

**COUNT I**
**VIOLATION OF 410 ILCS 513/25**
**SOLICIT, REQUEST, AND/OR REQUIRE GENETIC INFORMATION OF A PERSON OR A FAMILY MEMBER OF A PERSON AS A CONDITION OF EMPLOYMENT OR PRE-EMPLOYMENT APPLICATION**

54. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

55. Defendant is a corporation that directly or indirectly employs individuals within the State of Illinois and therefore meets the definition of an "employer" under 410 ILCS 513/10.

56. Family medical history includes the "manifestation or possible manifestation of a disease or disorder in a family member of [an] individual" and is incorporated into the definition of "genetic information" under 410 ILCS 513/10 and 45 C.F.R. § 160.103.

57. Plaintiff was asked to provide, and did provide, her family medical history as a condition of her employment during Defendant's application, hiring, and/or onboarding process.

58. Defendant, or an agent acting on its behalf, solicited, requested, or required Plaintiff to disclose family medical history as a condition of her employment.

59. Defendant indirectly solicited or requested Plaintiff to disclose her family medical history by asking about certain medical conditions with a genetic predisposition that had manifested in her parents, including heart disease, cancer, and diabetes, during the onboarding process.

60. Defendant required the genetic information that it solicited from Plaintiff as a term or condition of Plaintiff's employment with Defendant.

61. Defendant failed to direct Plaintiff, either verbally or in writing, not to provide genetic information when it requested Plaintiff to provide her family's medical history, nor at any other time.

62. Plaintiff and the proposed Class members were aggrieved by Defendant's violations of their statutorily protected rights to privacy in their genetic information, as set forth in GIPA, when Defendant directly or indirectly solicited or requested them to disclose their genetic information as a term or condition of their employment.

63. By indirectly or directly soliciting or requesting Plaintiff and the proposed Class members to provide their genetic information as alleged herein, Defendant violated Plaintiff's and the proposed Class members' rights to keep their respective genetic information private, as GIPA requires.

64. Defendant intended to solicit the family medical histories of new employees. Defendant included the questions as part of the mandatory pre-employment physical examination. Defendant required new employees complete this examination prior to starting employment. Defendant did not make it optional. Plaintiff and other Class members were expected attend the examination at the appointed time, submit to drug testing, and read, fill out, and sign all of the documents provided at the examination. The examination included a requirement that Plaintiff answer questions about her family medical history. Defendant intended for Plaintiff and other Class members to answer the family medical history questions just as much as Defendant intended for them to complete the other portions of the pre-employment physical.

65. Accordingly, Plaintiffs and other Class members are entitled to statutory damages in the amount of $15,000 for each instance in which Defendant willfully violated their GIPA rights by requesting the Class Member's family medical history, pursuant to 410 ILCS 513/40; or, in the alternative, statutory damages in the amount of $2,500 for each instance in which Defendant negligently committed a violation of GIPA by requesting the Class Member's family medical history, pursuant to 410 ILCS 513/40(1); an injunction against further GIPA violations, pursuant

to 410 ILCS 513/40(2); and their reasonable attorneys' fees and costs expended in pursuing this action, ,pursuant to 410 ILCS 513/40(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class of similarly situated individuals, prays for an Order as follows:

A. Finding this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P 23(a) and (b)(3) and certifying the proposed Class as defined herein;

B. Designating and appointing Plaintiff as representative of the proposed Class and Plaintiff's undersigned counsel as Class Counsel;

C. Declaring that Defendant's actions, as set forth above, violate GIPA;

D. Awarding Plaintiff and the proposed Class members statutory damages of $15,000 for *each* willful violation of GIPA pursuant to 410 ILCS 513/40(2), or alternatively, statutory damages of $2,500 for *each* negligent violation of GIPA pursuant to 410 ILCS 513/40(1), as described herein;

E. Declaring that Defendant's actions, as set forth above, were willful or alternatively, were negligent;

F. Enjoining Defendant from committing more GIPA violations;

G. Awarding Plaintiff and the proposed Class members reasonable attorneys' fees and costs incurred in this litigation pursuant to 410 ILCS 513/40(3);

H. Awarding Plaintiff and the proposed Class pre- and post-judgment interest, to the extent allowable; and

I. Granting all such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues so triable. Dated:

October 16, 2025

Respectfully submitted,

*Rachel N. Minder*

Rachel N. Minder
SIRI & GLIMSTAD LLP

745 Fifth Avenue, Suite 500
New York, NY 10151
T. (212) 532-1091
rminder@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*